**UNDER SEAL**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division



NOV 1 5 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.

EBERARDO MEDINA,
a/k/a "Lo,"
a/k/a "Lalo,"
a/k/a "MrMedina53,"
a/k/a "Lalo Medina,"

Defendant.

**UNDER SEAL**

Case No. 1:19-MJ-490

### AFFIDAVIT IN SUPPORT OF
### ARREST WARRANT AND CRIMINAL COMPLAINT

I, Youssef Ouzidane, being duly sworn, depose and state as follows:

1.     I am an Arlington County Detective and have been so employed for over fourteen years. I am currently assigned to the Organized Crime Section/Drug Enforcement Unit as a narcotics detective. I am currently deputized by the Drug Enforcement Administration ("DEA") for this investigation, and am a DEA Task Force Officer. I have experience in the investigation of violations of federal and state narcotics laws. I have conducted and participated in numerous narcotics investigations resulting in the arrest and conviction of drug distributors and the seizure of quantities of controlled substances and other evidence affiliated with drug distribution. I have received extensive training in drug identification, drug distribution methods, and drug enforcement techniques from various federal, state and local agencies, as well as private institutions. Some of these include the Northern Virginia Criminal Justice Academy and the Virginia Department of Criminal Justice. As a result, I am familiar with the use, effects, distribution techniques, appearance, and method of manufacture of controlled substances.

1

2.      This affidavit is being submitted in support of an arrest warrant and criminal complaint charging Eberardo MEDINA (hereinafter referred to as "E. MEDINA") with conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a) and (h).

3.      This affidavit contains information necessary to support probable cause.  It is not intended to include each fact and matter observed by or known to the United States. The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from state and federal law enforcement officers, and information provided by cooperating witnesses.

4.      All observations referenced in this affidavit that were not made by me were related to me by the person who made such observations.  All subjects named in this affidavit have been fully identified by either law enforcement officers or cooperating witnesses.

5.      Law enforcement officers utilized cooperating witnesses and sources throughout this investigation.  For the purpose of this affidavit, all cooperating witnesses will be referred to in the masculine gender.  Each cooperating witness has provided information against his own penal interest; said information has been independently corroborated by law enforcement, and is considered reliable.

## FACTS ESTABLISHING PROBABLE CAUSE

6.      During the month of July 2017, law enforcement received a complaint in reference to an individual engaged in cocaine sales at the Darna Lounge located in Arlington, Virginia, which is located within the Eastern District of Virginia.  The individual, subsequently identified as CS-1, was later arrested and provided detailed information regarding his source of

2

supply – identified as CS-2. CS-2 was also subsequently arrested by law enforcement, and also

agreed to cooperate. CS-2 stated that his source of supply was an individual from New York, and

was later identified as Alberto RODRIGUEZ ("RODRIGUEZ"). RODRIGUEZ's courier was

also later identified as Cyrus WILLIAMS ("WILLIAMS"). RODRIGUEZ and WILLIAMS

were arrested. After the identification and arrest of RODRIGUEZ and WILLIAMS, various law

enforcement techniques were utilized to identify the cocaine supplier of RODRIGUEZ.

Eberardo MEDINA ("E. MEDINA") was identified as the source of cocaine originating from

California. Further investigation also showed that E. MEDINA is involved in the laundering of

the narcotics proceeds through various funnel accounts involving Juan MEDINA ("J.

MEDINA"), Carlos ASCENCIO ("ASCENCIO), Juan MONTOYA ("MONTOYA"), and others.

I believe that between December 2015 and April 2018, E. MEDINA and his organization

laundered approximately $900,000 of narcotics proceeds.

## HISTORICAL INFORMATION PROVIDED BY CS-1

7.      In May of 2018, in Arlington, Virginia, law enforcement executed a search

warrant on CS-1 which resulted in the seizure of approximately four ounces of cocaine and two

cellular telephones. CS-1 agreed to cooperate with law enforcement and provide detailed

information about his cocaine trafficking.

8.      CS-1 admitted that he had been distributing cocaine for approximately two years.

CS-1 further admitted that he had been receiving multiple ounce quantities of cocaine from CS-2

on a regular basis. CS-2 had previously told CS-1 that he obtained approximately one-half of a

kilogram (approximately 500 grams) of cocaine from his New York supplier approximately

every two weeks. CS-1 stated that the cocaine seized by law enforcement had been supplied by

CS-2 earlier on the same date in Fairfax County, Virginia, which is located within the Eastern

District of Virginia. CS-1 stated that CS-2 had "fronted" the seized cocaine to CS-1, meaning

CS-2 had supplied the cocaine to CS-1 on consignment. Since CS-2 expected payment for the

cocaine, under the direction and supervision of law enforcement, CS-1 agreed to contact CS-2 by

calling CS-2's cellular telephone number. CS-2 agreed to meet CS-1 in Arlington, Virginia,

within the Eastern District of Virginia, to receive the payment. CS-2 was subsequently detained

by law enforcement upon his arrival at the meet location.

### LAW ENFORCEMENT SEIZURE OF COCAINE FROM CS-2 IN MAY 2018

9.      During his detention, CS-2 agreed to speak with law enforcement in regards to

CS-2's cocaine trafficking. CS-2 advised law enforcement that he had additional cocaine at his

residence in Fairfax County, Virginia. CS-2 consented to a search of his residence, and law

enforcement seized approximately ten ounces of suspected cocaine.[1] CS-2 confirmed his source

of supply ("SOS") for cocaine was located in New York, and that he knew the SOS by his aliases

of "Forty" or "40" or "Mike." "Forty" frequently utilized a courier, known as "C" or "Murda" to

transport the cocaine from "Forty" in New York to CS-2 in the greater Washington, D.C.

metropolitan area. Law enforcement was able to fully identify "Forty" as Alberto

RODRIGUEZ, and "C" as Cyrus WILLIAMS.

8.      Law Enforcement reviewed subpoenaed toll records of the cellular telephone

numbers CS-2 provided for WILLIAMS and RODRIGUEZ. CS-2 identified the phone number

for RODRIGUEZ as 646-XXX-3496 (hereinafter, "Phone A"), the use of which was terminated

in March 2018.

9.      Through toll analysis, agents were able to identify the replacement number for

Phone A as 347-XXX-4115 (hereinafter, "Phone B") activated on April 3, 2018. Subpoenaed

---

[1] The substance field-tested positive for cocaine.

subscriber information for Phone B indicated that the cell phone was registered to "Jit Ram Ram" with a known subscriber address, hereinafter referred to as the "HILLSIDE ADDRESS." Agents were unable to identify an individual or business with the name "Jit Ram Ram" at the HILLSIDE ADDRESS, which was determined to be a shopping center. Based on training and experience, I am aware that narcotics traffickers frequently register cell phones with fictitious subscriber information and change cell phones to avoid detection by law enforcement.

## HISTORICAL INFORMATION PROVIDED BY CS-2

10. CS-2 admitted that he had been distributing cocaine since early 2014. CS-2 identified RODRIGUEZ as his source of supply of cocaine. CS-2 stated that he initially traveled to New York to obtain five ounces of cocaine on a weekly or bi-weekly basis directly from RODRIGUEZ. CS-2 then transported the cocaine back to the Eastern District of Virginia.

11. In approximately late 2016, RODRIGUEZ encouraged CS-2 to purchase larger quantities of cocaine and offered to sell CS-2 20 to 25 ounces at a time for a price of approximately $15,000 United States Currency ("U.S.C."). CS-2 would pre-order the cocaine from WILLIAMS' via phone and it would then be delivered by WILLIAMS. After the "pre-order" was made, WILLIAMS would inform CS-2 when he would be arriving in order to transfer the cocaine and receive payment from CS-2.

12. From approximately the end of 2017 through May 2018, CS-2 obtained 20-25 ounce quantities of cocaine from RODRIGUEZ through WILLIAMS every two to three weeks. WILLIAMS usually traveled from New York to the Washington Metropolitan Area through various means including a bus service that stopped at Union Station. WILLIAMS had also traveled directly to Fairfax County, Virginia to conduct drug transactions with CS-2. CS-2 provided a cellular telephone number for WILLIAMS as 347-XXX-9634, hereinafter referred to

5

as "WILLIAMS TELEPHONE NUMBER."

### SEIZURE OF SUSPECTED COCAINE FROM WILLIAMS ON JUNE 5, 2018

13.     During the first week of June 2018, under the direction and supervision of law enforcement, CS-2 contacted WILLIAMS to arrange a delivery of 50 ounces of cocaine.

14.     On June 5, 2018, law enforcement detained WILLIAMS at Union Station, located in Washington, D.C., and seized approximately 1304.6 grams of cocaine and a cellular telephone.  WILLIAMS had traveled from New York to Union Station via a Greyhound bus to sell cocaine to CS-2.

### EXECUTION OF SEARCH WARRANT ON WILLIAMS CELLULAR TELEPHONE

15.     On June 11, 2018, the Honorable Theresa C. Buchanan, United States Magistrate Judge for the Eastern District of Virginia, authorized a search warrant for the cellular telephone known as the WILLIAMS TELEPHONE NUMBER.  The subsequent search of the phone revealed photos of kilogram quantities of cocaine, receipts of mail parcels, multiple telephone numbers used by RODRIGUEZ, and a video of RODRIGUEZ.  During the video, which identified RODRIGUEZ by the name "Forty," RODRIGUEZ displayed a paper copy of his recently obtained driver's license in the name of Alberto RODRIGUEZ.

16.     The phone search also revealed the following text message communications between RODRIGUEZ who utilized Phone B, and WILLIAMS who utilized the WILLIAMS TELEPHONE NUMBER in which they discussed the delivery of the fifty ounces of cocaine seized by law enforcement in June 2018 (as described in Paragraphs 13-14 above).  Prior to these text messages, CS-2 had ordered the 50 ounces of cocaine from WILLIAMS, who asked RODRIGUEZ for the narcotics.  The deal was subsequently delayed.  RODRIGUEZ was angry with WILLIAMS, as indicated by the following communications:

6

| DATE | TIME | FROM | MESSAGE |
|------|------|------|---------|
| 6/2/2018 | 10:25 AM | RODRIGUEZ | Text me his number |
| 6/2/2018 | 10:25 AM | RODRIGUEZ | Im a spaz on his ass |
| 6/2/2018 | 10:26 AM | RODRIGUEZ | This some fucking bullshit |
| 6/2/2018 | 10:26 AM | RODRIGUEZ | I fucking asked u 5 fucking times yesterday |
| 6/2/2018 | 10:26 AM | RODRIGUEZ | 5 times |
| 6/2/2018 | 10:26 AM | RODRIGUEZ | Are u fucking sure |
| 6/2/2018 | 10:26 AM | RODRIGUEZ | U being fucking thirsty just worried about ur situation now im fucked |
| 6/2/2018 | 10:26 AM | WILLIAMS | I showed u the texts |
| 6/2/2018 | 10:27 AM | RODRIGUEZ | I didnt wanna do the 50 in the first placev |
| 6/2/2018 | 10:27 AM | RODRIGUEZ | I told u to call him in front of me u were so thirsty like yeah look its good |
| 6/2/2018 | 10:27 AM | RODRIGUEZ | Send me his number |
| 6/2/2018 | 10:27 AM | RODRIGUEZ | Im fucking tight |
| 6/2/2018 | 10:28 AM | WILLIAMS | Me too |

17.     In the above text messages sent on June 2, 2018, RODRIGUEZ directed

WILLIAMS to "Text me his number," meaning CS-2's number.  RODRIGUEZ was angry with

WILLIAMS, and texted "U being fucking thirsty just worried about ur situation now im

fucked."  Based on my experience in this and other investigations, I believe that WILLIAMS

was insisting on conducting the transaction with CS-2, even though it had been delayed.  This

had left RODRIGUEZ in an unfavorable position with his source of supply, because

RODRIGUEZ would have to pay the SOS for the cocaine, prior to collecting the money for the

sale of the cocaine to CS-2.  RODRIGUEZ further indicated that he did not want to conduct a

fifty ounce sale in the first place.  RODRIGUEZ texted WILLIAMS "Im fucking tight," which I

believe implied that RODRIGUEZ did not have enough money to pay his cocaine SOS.  The

SOS was later identified as E. MEDINA, as described further below.

### ARREST OF ALBERTO RODRIGUEZ ON NOVEMBER 27, 2018

18.     On November 27, 2018, law enforcement arrested RODRIGUEZ in North

Bergen, NJ for conspiracy to distribute 5 kilograms or more of cocaine.  During his arrest,

7

RODRIGUEZ was in possession of jewelry, $8,829.00 USC, and a cellular telephone.

RODRIGUEZ pled guilty for his role in the offense and was sentenced on July 12, 2019.

## HISTORICAL INFORMATION PROVIDED BY CW-1

19.    As a result of this investigation and RODRIGUEZ's arrest, law enforcement

identified a confidential witness, hereinafter referred to as CW-1.  CW-1 was an associate of

RODRIGUEZ and made statements against his own penal interest.  The veracity of his account

was corroborated through records and investigative actions taken by law enforcement.  In or

about February 2018, CW-1 informed law enforcement that RODRIGUEZ had previously

identified a social media account of RODRIGUEZ's cocaine supplier: a male individual named

"LO," bearing LO's photographic image.  Law enforcement subsequently identified the image

of "LO" as E. MEDINA.  CW-1 told law enforcement that the aforementioned social media

account was assigned to the name "MrMedina53."  LO's identical photographic image was

later found to be associated with another social media account assigned to the name "Lalo

Medina," and linked to cellular telephone number 323-XXX-3894 (hereinafter referred to as the

"MEDINA TELEPHONE NUMBER"), utilized by E. MEDINA.  The MEDINA TELEPHONE

NUMBER, along with other burner phones (disposable mobile devices that provide additional

anonymity) were in communication with the WILLIAMS TELEPHONE NUMBER.

## TEXT COMMUNICATIONS BETWEEN MEDINA TELEPHONE NUMBER AND WILLIAMS TELEPHONE NUMBER

20.    Based on the information provided by CW-1, law enforcement subsequently

searched WILLIAMS' cellular telephone again.  This search revealed the following text

message communications between WILLIAMS, who utilized the WILLIAMS TELEPHONE

NUMBER and E. MEDINA, who utilized the MEDINA TELEPHONE NUMBER.  Below is a

text message exchange during which they discussed the shipment of money using the United

States Postal Service ("USPS") to E. MEDINA in California, and subsequently the shipment of cocaine from California to New York using USPS to a known address, hereinafter referred to as the BRINSMADE ADDRESS. The BRINSMADE ADDRESS is associated with WILLIAMS according to law enforcement databases and a reliable witness.

| DATE | TIME | FROM | MESSAGE |
|------|------|------|---------|
| 5/25/2018 | 4:21 PM | WILLIAMS | Yooo |
| 5/25/2018 | 4:21 PM | MEDINA | What up |
| 5/25/2018 | 4:22 PM | WILLIAMS | Photo of a US mail receipt |
| 5/25/2018 | 4:22 PM | WILLIAMS | Photo of a US mail receipt |
| 5/25/2018 | 4:44 PM | MEDINA | What's the total of envelopes my boy |
| 5/25/2018 | 4:46 PM | WILLIAMS | 4 |
| 5/25/2018 | 4:46 PM | WILLIAMS | 2 today |
| 5/25/2018 | 4:47 PM | WILLIAMS | 2 more in route |
| 5/25/2018 | 4:47 PM | MEDINA | For what day |
| 5/25/2018 | 4:57 PM | MEDINA | Do we get anything tomorrow? |
| 5/25/2018 | 4:57 PM | WILLIAMS | Today |
| 5/25/2018 | 4:58 PM | MEDINA | And Tuesday |
| 5/25/2018 | 4:58 PM | WILLIAMS | Yea |
| 5/25/2018 | 4:59 PM | MEDINA | 4 today and 2 on Tuesday |
| 5/30/2018 | 4:00 PM | MEDINA | Send me ur addy |
| 5/30/2018 | 4:02 PM | WILLIAMS | Yoo who's this? |
| 5/30/2018 | 4:02 PM | WILLIAMS | Ok |
| 5/30/2018 | 4:06 PM | MEDINA | Lo |
| 5/30/2018 | 4:06 PM | WILLIAMS | Got u |
| 5/30/2018 | 4:07 PM | WILLIAMS | [BRINSMADE ADDRESS] |
| 5/31/2018 | 9:04 PM | WILLIAMS | Yoo |
| 5/31/2018 | 9:05 PM | MEDINA | I'm not home |
| 5/31/2018 | 9:05 PM | WILLIAMS | What's the math? |
| 5/31/2018 | 9:05 PM | MEDINA | Tell 4 to get with Is |
| 5/31/2018 | 9:06 PM | WILLIAMS | Ok |
| 6/1/2018 | 4:30 PM | MEDINA | How we looking |
| 6/1/2018 | 4:31 PM | WILLIAMS | Still waiting |
| *6/1/2018 | 4:50 PM | WILLIAMS | We good |
| 6/1/2018 | 4:55 PM | MEDINA | 👍■ |
| 6/4/2018 | 11:10 AM | MEDINA | How we looking |

9

| 6/4/2018 | 11:10 AM | WILLIAMS | Good |
| 6/5/2018 | 3:19 PM | MEDINA | How we looking |
| 6/5/2018 | 3:23 PM | WILLIAMS | Yoo What's up with, how doing |
| 6/5/2018 | 3:23 PM | WILLIAMS | Come on god |
| 6/5/2018 | 3:24 PM | MEDINA | What happen |
| 6/5/2018 | 7:12 PM | MEDINA | What up my boy |
| 6/5/2018 | 7:13 PM | MEDINA | Plz no execuses |
| 6/5/2018 | 9:13 PM | MEDINA | ??? |

21.     In the above text messages sent on May 25, 2018, at 4:22 PM, WILLIAMS sent

E. MEDINA two separate photos of USPS postal receipts.  According to CW-1, RODRIGUEZ

would send money through USPS to California to purchase cocaine or have other people send

the money for him.  Additional text messages also reflect that WILLIAMS, who has

subsequently pled guilty to a conspiracy to distribute cocaine with RODRIGUEZ, also sent

money in US postal envelopes to California.  In the above text message, E. MEDINA asked

WILLIAMS "What's the total of envelopes my boy."  WILLIAMS replied "4," "2 today," "2

tomorrow."  Law enforcement believes that this indicated that four separate envelopes containing

money were sent to E. MEDINA in California to purchase cocaine.  On May 30, 2018, E.

MEDINA told WILLIAMS "Send me your addy (address)," WILLIAMS replied "Yoo who's

this?" E. MEDINA responded "Lo."  WILLIAMS subsequently replied "[BRINSMADE

ADDRESS]."  Law enforcement believes that E. MEDINA received the above-mentioned

envelopes and then asked WILLIAMS for his address so he could send the US postal envelopes

containing cocaine.

22.     During the above exchange, E. MEDINA identified himself as "Lo" and

WILLIAMS provided his BRINSMADE ADDRESS to E. MEDINA.  Furthermore, on June 1,

2018, WILLIAMS texted E. MEDINA "We good," which law enforcement believes indicated

that WILLIAMS received the cocaine.  In addition, E. MEDINA had sent a photograph of a mail

receipt to WILLIAMS' phone, which shows a Reference USPS number 9505 5158 2812 8150 1765 19. This package was sent to the BRINDSMADE ADDRESS. Furthermore, in the text messages between RODRIGUEZ and WILLIAMS, described in Paragraph 17, on June 2, 2018, when CS-2 delayed the narcotics transaction, RODRIGUEZ texted WILLIAMS "I didnt wanna do the 50 in the first placev." RODRIGUEZ specifically stated "50," which I believe is a reference to the 50 ounces of cocaine that CS-2 arranged to purchase from WILLIAMS. I further believe that RODRGUEZ was angry because he would have to pay E. MEDINA for the cocaine prior to CS-2 purchasing same. I believe that subsequently, the cocaine received by WILLIAMS from E. MEDINA was in his possession at the time of his arrest on June 5, 2018, in Washington, DC – when WILLIAMS came to conduct the narcotics transaction with CS-2. Following the date and time of the arrest, E. MEDINA attempted to communicate via text with WILLIAMS, however there was no response due to WILLIAMS' arrest.

## ANALYSIS OF MEDINA TELEPHONE NUMBER AND WILLIAMS TELEPHONE NUMBER

23.     Law enforcement reviewed subpoenaed records of the MEDINA TELEPHONE NUMBER. It should be noted that between May 25, 2018 and June 5, 2018, the MEDINA TELEPHONE NUMBER and WILLIAMS TELEPHONE NUMBER communicated approximately 38 times. Furthermore, the last communication occurred on June 5, 2018, WILLIAMS' arrest date.

24.     Subpoenaed subscriber information for the MEDINA TELEPHONE NUMBER indicated that since September 11, 2013, the cellular telephone has been registered to Jose Medina (E. MEDINA's brother), at the 734 West 53rd Street, Los Angeles, California 90037 (hereinafter, "MEDINA ADDRESS"). In addition, E. MEDINA was arrested on August 16, 2011 on a probation violation/misdemeanor warrant at the MEDINA ADDRESS. During this

11

arrest, E. MEDINA provided the MEDINA TELEPHONE NUMBER to law enforcement.

Moreover, the MEDINA ADDRESS and the MEDINA TELEPHONE NUMBER were listed as

the residential address and residential phone number for E. MEDINA in a 2014 Los Angeles

Police Department (LAPD) police report. As previously stated, the MEDINA TELEPHONE

NUMBER is also associated with a social media profile assigned to the name "Lalo Medina"

bearing an image of E. MEDINA. Based on my training and experience, I am aware that

narcotics traffickers frequently register cell phones with a relative's subscriber information

and/or use fictitious names, as well as frequently change cell phones to avoid detection by law

enforcement. This suggests that E. MEDINA utilized the MEDINA TELEPHONE NUMBER as

well as other burner phones to communicate with the WILLIAMS TELEPHONE NUMBER

regarding the solicitation and arrangement to distribute cocaine through RODRIGUEZ.

25.     In addition to the aforementioned text message exchange, other written

communications between the WILLIAMS TELEPHONE NUMBER and PHONE A, utilized by

RODRIGUEZ, as well as with other burner phones utilized by E. MEDINA, reflect that "funnel

accounts" were utilized, where money is deposited in one bank location and later withdrawn in

another, as part of a concurrent money laundering scheme in this drug trafficking conspiracy. In

this case, the funds were primarily deposited in the New York area and withdrawn immediately

at multiple locations in California.

26.     Subsequently, law enforcement identified California conspirators who had

permitted the use of financial institution accounts in their names to be used for funneling

narcotics proceeds from New York to California. Photographic evidence, receipts and/or

statements made against penal interests, corroborate that upon New York cash deposit

transactions being credited to the respective California accounts, a cocaine shipment was sent out

via USPS two-day priority mail from California. Each package contained approximately 1 kilogram of cocaine.

## RELEVANT CONFIDENTIAL SOURCE AND WITNESS CONDUCT IN THE DRUG CONSPIRACY

27.     CW-1 reported that he conducted financial transactions at the direction of RODRIGUEZ and on behalf of the criminal enterprise. CW-1 was cognizant of RODRIGUEZ's cocaine distribution operation and was aware of at least one visit by RODRIGUEZ to Los Angeles to secure a source of cocaine supply. CW-1 knowingly participated in this money laundering and cocaine distribution conspiracy and received financial compensation and/or benefits as a result of his involvement. Under RODRIGUEZ's leadership, CW-1 was instructed to conduct financial transactions at financial institutions and/or ship U.S.C. via priority mail from New York to California on at least 12 occasions. RODRIGUEZ mandated that CW-1 deposit U.S.C. into California based accounts in amounts lower than $10,000 to evade detection. CW-1 also stated that he was aware of other individuals that were conducting currency deposits on behalf of RODRIGUEZ. I recognize this evasion as an attempt to avoid the United States Department of the Treasury form known as a Currency Transaction Report ("CTR"). CTRs are used by law enforcement to uncover a wide variety of illegal activities including tax evasion, narcotics trafficking and money laundering. Many individuals involved in these illegal activities and planning to deposit (or withdraw) more than $10,000 in cash at a bank are aware of these reporting requirements and take active steps to try to cause such institutions to fail to file CTRs with respect to their transactions. These active steps are often referred to as "structuring" and involve engaging in multiple cash transactions in amounts of $10,000 or less, instead of engaging in one cash transaction of more than $10,000 at one time. Structuring is prohibited by 31 U.S.C. § 5324(a).

28.     As a result of this investigation, law enforcement also identified another confidential source, hereinafter referred to as CW-2. CW-2 was an associate of RODRIGUEZ and made statements against his own penal interest. The veracity of his account was corroborated through records and investigative actions taken by law enforcement. CW-2 also reported that he conducted financial transactions at the direction of RODRIGUEZ by depositing U.S.C. to accounts based out of California. CW-2 acknowledged these monies were the result of RODRIGUEZ's cocaine distribution operation.

29.     CW-1 and CW-2 admitted that they and other New York conspirators utilized New York financial institutions, amongst other locations, to deposit the cash payments associated with the purchase (and subsequent distribution) of cocaine in Virginia. Frequently, these California based funnel accounts and the New York conspirators' cash deposits were used in a coordinated manner to funnel illicit bulk currency to California. These primarily cash deposits into the funnel accounts occurred in New York and other identifiable locations associated with the scheme, many of which originated from CS-2 in Virginia. These deposits were followed by cash withdrawals in California by the funnel account holders who utilized various financial institution accounts. These funnel account holders were determined to have a relationship with E. MEDINA.

## FUNNEL ACCOUNT ACTIVITY UNDER THE DIRECTION OF EBERARDO MEDINA

30.     To date, at least seven funnel accounts have been identified as being utilized by RODRIGUEZ's New York conspirators, as well as another self-admitted drug distributor in Chicago. At least six of these funnel account holders were determined to be affiliated with E. MEDINA, while the one other demonstrated the same deposit/withdrawal scheme utilized by the Chicago conspirator and the New York conspirators. At least $900,000 was deposited between

December 2015 and April 2018. Below, I have provided records for three funnel accounts which reflected deposits conducted by at least CW-1, CW-2, and/or WILLIAMS into California based accounts. Furthermore, the WILLIAMS TELEPHONE NUMBER, the MEDINA PHONE NUMBER, and/or other burner phone(s) utilized by E. MEDINA, engaged in text message communications regarding these accounts.

31.     Attached as Exhibit A is information about bank accounts utilized in this conspiracy, to include accounts in the names of ASCENCIO, J. MEDINA, and MONTOYA.[2]

32.     Furthermore, intelligence extracted from the phone associated with the WILLIAMS TELEPHONE NUMBER was compared with the below transactional account activity. The analysis reflected that deposits coincided with and/or preceded cocaine shipments. This information was further corroborated by CW-1. The totality of the information is consistent with money laundering and cocaine distribution schemes led by E. MEDINA.

### JESUS MEDINA'S AFFILIATION WITH EBERARDO MEDINA

33.     A 2011 law enforcement police report reflected that E. MEDINA and J. MEDINA are brothers. The previously referenced written communications in the phone associated with the WILLIAMS TELEPHONE NUMBER demonstrated E. MEDINA's leadership in the orchestration of the money laundering and cocaine distribution conspiracy via J. MEDINA's bank accounts (which were subpoenaed and analyzed by law enforcement). For example, on

---

[2] Law Enforcement was made aware that the banking policies of both Bank of America and Wells Fargo Bank stipulate that only an authorized signer on a respective account may withdraw funds with proof of identification. Although the ATM withdrawal limits can vary, the authorized signer's debit card and Personal Identification Number (PIN) are required to complete a withdrawal transaction. This, in my training and experience, suggests that J. MEDINA, ASCENCIO, and MONTOYA either personally completed cash withdrawals from their respective accounts or knowingly provided their issued debit cards and PINs to another individual to conduct cash withdrawals in California.

November 21, 2017, WILLIAMS received a text message from a contact listed as "LO" (who is E. MEDINA) who utilized burner phone number 323-XXX-6756. The text message contained a screenshot of J. MEDINA's Bank of America account #XXXXXXXX1415 and another California conspirator's name and account information. On this same date, $7,500 was deposited into this J. MEDINA account in New York, followed by a next day $7,300 withdrawal in California – denoting a percentage of profit kept by J. MEDINA. In the ensuing message, WILLIAMS sent an image of a known College Point, New York recipient address, hereinafter referred to as the "NY RECIPIENT ADDRESS," back to "LO." Furthermore, on November 24, 2017, RODRIGUEZ sent an image of a USPS postal receipt reflecting the tracking number of # 9505 5163 3696 XXXX XXXX XX back to WILLIAMS. This tracking number is associated with a USPS two day priority mail delivery to College Point, NY on November 25, 2017. Based on my training and experience, I believe that upon "LO" (E. MEDINA) and the California criminal enterprise receiving the narcotics proceeds in the J. MEDINA funnel account, the cocaine was then shipped to the NY RECIPIENT ADDRESS.

34.    On November 28, 2017, WILLIAMS' cellular telephone recorded a screenshot of J. MEDINA'S Bank of America Account # XXXXXXXX1415. On this same date, $6,000 was deposited into J. MEDINA's account in New York, followed by a next day $5,800 withdrawal in California – again denoting a percentage of profit kept by J. MEDINA. Based on my training and experience, I believe that J. MEDINA willingly participated in the receipt of narcotics proceeds on behalf of E. MEDINA and the criminal enterprise.

35.    As demonstrated in the FINANCIAL ATTACHMENT (attached as Exhibit A), the 2017 cash transaction pattern involving J. MEDINA's accounts is noteworthy because over the course of approximately ten months, 20 cash deposits ranging from $1,000.00-$9,000.00

occurred in either New York or Virginia Beach, VA followed by 20 same day, next day, or next month cash withdrawals in California. A total of $153,200.00 in round, even dollar amounts was deposited into both Wells Fargo and Bank of America accounts at branch locations found in New York or Virginia. Of that amount, $149,110.00 was withdrawn from the accounts in California – indicating that these were funnel accounts and further indicative of a money laundering and cocaine distribution scheme. Bank records reflect the driver's license identifications of CW-2, WILLIAMS, and other known individuals who conducted certain deposits into the accounts. Furthermore, each cash withdrawal reflects a percentage of profit kept by J. MEDINA – suggesting that he was a willing participant who received a financial benefit for the use of his accounts. The activity reflected in the FINANCIAL ATTACHMENT is further unusual in that both accounts reflect little or no activity that would be normally associated with legitimate banking or financial needs. Moreover, this type of activity for personal accounts is abnormal for an individual who listed his occupation on a Wells Fargo Consumer Account Application as a shipping driver with Iluma Fashion Inc. located in California.

36.    I also reviewed business records from the California Employment Development Department (EDD) that reflected a total of $38,640.00 in reported W-2 wages or other indications of employment for J. MEDINA in California between fiscal year 2017 and fiscal year 2018. This amount is in gross contrast with the transactional activity reflected in the FINANCIAL ATTACHMENT. I also reviewed records from the New York State Department of Labor and Virginia Employment Commission for that time frame, which reflected that there were no reported W-2 wages or other indications of employment for J. MEDINA in New York nor Virginia that would explain the receipt of New York and Virginia cash based deposits into the accounts.

## CARLOS ASCENCIO'S AFFILIATION WITH EBERARDO MEDINA

37.     Law enforcement sources documented a known association between Carlos

ASCENCIO and E. MEDINA.  On or about January 6, 2018, the Los Angeles Police Department

("LAPD") cited E. MEDINA for a traffic offense that occurred while he was operating a 2014

Lexus 350 with California tag XXXX097.  The vehicle is registered to "Carlos Alexis

Ascencio."  Additionally, a social media account identified as belonging to E. MEDINA

reflected at least one written comment by "Carlos Ascencio."

38.     The previously referenced written communication in the cellular phone associated

with the WILLIAMS TELEPHONE NUMBER demonstrated E. MEDINA's leadership in the

orchestration of the money laundering and cocaine distribution conspiracy via ASCENCIO's

bank accounts.  For example, on January 25, 2018, burner phone number 323-XXX-6756

associated with contact name "Low" (E. MEDINA) sent a text message to WILLIAMS which

stated "can you do Carlos account for $e."  On January 31, 2018, WILLIAMS' cellular telephone

recorded a screenshot image reflecting "Carlos ASCENCIO Wells Fargo ACC XXXXX6651."

On that same day, there was a $500 cash deposit into ASCENCIO's account #XXXXX6651 at

the Wells Fargo Bank branch located at 20 Great Neck Road, Great Neck, NY.

39.     On March 7, 2018, there was a text message sent from unassigned burner phone

number 323-XXX-8374 to the WILLIAMS TELEPHONE NUMBER which contained a

screenshot of ASCENCIO's Wells Fargo Accounts (#XXXXX6651 and # XXXXXX7028) and

another California conspirator's name and account information.

40.     On March 8, 2018, a cash deposit in the amount of $6,830 was made into

ASCENCIO's account #XXXXX6651 in New York.  On this same date, a message conversation

ensued in which RODRIGUEZ asked WILLIAMS if he (referring to WILLIAMS) went to

"wells," and WILLIAMS confirmed that he was almost there, followed by a confirmation that he sent an amount but that it was not the whole amount. WILLIAMS provided a final deposited amount back to RODRIGUEZ. The amount in the message was "6830" – the same total as the cash deposit into account #XXXXX6651. Furthermore, on the same day, two separate withdrawals were made from ASCENSIO's account XXXXX6651 in California – totaling $6,830.

41.     As demonstrated in the FINANCIAL ATTACHMENT, the cash transaction pattern into ASCENCIO's accounts is noteworthy because over the course of approximately 18 months (between end of 2016-2018), 26 cash deposits ranging from $500.00 to $9,000.00 occurred in New York and Virginia based Wells Fargo and Bank of America branches. These deposits were followed by 45 same day/next day/closely consecutive day cash withdrawals (or notable transfers) ranging from $60.00 to $9,000.00 in California. A total of $203,148.00 was deposited in New York and $205,630.00 was withdrawn in California which indicated that these were funnel accounts, and further indicative of a money laundering and cocaine distribution scheme. Bank records reflect the driver's license identifications of CW-1, CW-2, and WILLIAMS (along with others) as having conducted certain deposits into the accounts. The activity reflected in the FINANCIAL ATTACHMENT is further unusual in that the Wells Fargo account opening documentation reflected that ASCENCIO was a sole proprietor who engaged in auto repair. The business was reportedly established in June 2016 with reported annual gross sales of $10,000.00. This reported annual gross sale amount is in stark contrast to the documented transactional activities and locations of those activities.

42.     I also reviewed business records from the California Employment Development Department (EDD) that reflected a total of $56,229.29 in reported W-2 wages from Costco

19

Wholesale Corp and/or another employer for ASCENCIO in California between fiscal year 2017 and fiscal year 2018. This information is corroborated by routine deposits from Costco into an ASCENCIO account. This amount is in gross contrast with the transactional activity reflected in the FINANCIAL ATTACHMENT. I also reviewed business records for the same time frame from the New York State Department of Labor and Virginia Employment Commission which reflected no reported W-2 wages or other indications of employment for ASCENCIO in New York or Virginia that would explain the receipt of cash based deposits into the accounts in New York and Virginia.

43.    Of notable interest, there were transfers in the financial records that signified a friendship shared between E. MEDINA and ASCENCIO. For example, in August of 2017, five money transfers from both of ASCENCIO's Wells Fargo accounts were made payable to a female, herein referred to as "FEMALE #1." Each transfer referenced that the transfer was from "LALO," "LALOW," or "L." In August and September of 2017, there were two money transfers made payable to a second female, hereinafter referred to as FEMALE #2. Each transfer referenced that it was from "LALOW." Furthermore, a social media account identified as belonging to E. MEDINA reflected at least one written comment by the same name as FEMALE #2 – suggesting, in my training and experience, that the above referenced transfers from ASCENCIO's accounts were made under the direction of E. MEDINA.

**JUAN MONTOYA'S AFFILIATION WITH EBERARDO MEDINA**

44.    Law enforcement sources documented a known relationship between Juan Montoya (hereinafter referred to as MONTOYA) and E. MEDINA. On or about November 2018, MONTOYA, E. MEDINA, and another identified individual were detained pursuant to a search warrant executed at a known address (hereinafter referred to as the "HARVARD

ADDRESS"). E. MEDINA's alternate residence is located at the HARVARD ADDRESS.
Pursuant to the search warrant, law enforcement recovered contraband to include an assault rifle,
a 100 round capacity AR magazine, a money counter, and U.S.C. Moreover, the HARVARD
ADDRESS was previously referenced on February 26, 2018, when RODRIGUEZ sent a text
message to WILLIAMS which stated "Lalow medina [HARVARD ADDRESS]." Furthermore,
the investigation determined that the HARVARD ADDRESS was also the recipient address of at
least three known USPS two day shipments from New York likely containing narcotics proceeds.

45.      The referenced written communications in the cellular phone associated with the
WILLIAMS TELEPHONE NUMBER demonstrated E. MEDINA's leadership in the
orchestration of the money laundering and cocaine distribution conspiracy via MONTOYA'S
bank accounts. For example, on November 21, 2017, WILLIAMS received a text message from
a contact listed as "Low" who utilized phone number 323-XXX-6756 (believed to be E.
MEDINA). The text message contained a screenshot of MONTOYA'S Wells Fargo Account #
XXXXXX9829 and another California conspirator's name and account information. On this
same date, $7,500 was deposited into MONTOYA'S account in New York, followed by a same
day/same amount withdrawal in California. In the ensuing text message, WILLIAMS sent an
image of a known College Point, New York recipient address, previously referred to as the "NY
RECIPIENT ADDRESS," back to "LO." On November 24, 2017, RODRIGUEZ sent an image
of a USPS postal receipt reflecting the tracking number of # 9505 5163 3696 XXXX XXXX XX
back to WILLIAMS. This tracking number is associated with a USPS two-day priority mail
delivery from California to College Point, New York on November 24, 2017. Based on training
and experience, I believe that upon E. MEDINA and the California criminal enterprise receiving

the narcotics proceeds in the MONTOYA funnel account, the cocaine was then shipped to the NY RECIPIENT ADDRESS.

46.     As demonstrated in the FINANCIAL ATTACHMENT, the cash transaction pattern into MONTOYA's accounts is noteworthy because over the course of 13 months (between 2017-2018), 25 cash deposits ranging from $50.00 to $9,000.00 occurred in New York and Virginia based Wells Fargo and Bank of America branches.  These deposits were followed by 23 same day/next day/closely consecutive day cash withdrawals ranging from $7,000.00 to $9,000.00 in California.  A total of $199,400.00 was deposited in New York and Virginia, and $199,400.00 was withdrawn in California.  This pattern indicated that these were funnel accounts used in furtherance of a money laundering and cocaine distribution scheme, and that the primary purpose of these banking relationships was to facilitate the interstate movement of cash.  Records reflect that the driver's license identifications of CW-1, CW-2, WILLIAMS, and other known associates of the New York drug trafficking organization ("DTO") were utilized to conduct deposits into the account.  Overall, this type of activity for personal accounts is further unusual in that the account opening documentation identified MONTOYA's employer as the JRC Group – a construction company.

47.     I also reviewed business records from the California Employment Development Department (EDD) that reflected a total of $97,469.41 in reported W-2 wages or other indications of employment for MONTOYA in California between fiscal year 2017 and fiscal year 2018.  This amount is in gross contrast with the transactional activity reflected in the FINANCIAL ATTACHMENT.  I also reviewed business records from the New York State Department of Labor and the Virginia Employment Commission for the years 2017 to 2018 which showed no reported W-2 wages or other indications of employment for MONTOYA in

22

New York or Virginia that would explain the receipt of cash based deposits into the accounts in New York and Virginia.

48. J. MEDINA, ASCENCIO, MONTOYA, and other California account holders, therefore, permitted the use of the aforementioned accounts to facilitate the interstate movement of U.S.C. This money is directly associated with the proceeds of a cocaine distribution conspiracy of E. MEDINA.

## DOMESTIC AND TRANSATIONAL NEXUS CONSPIRACY

49. CS-4 is another cooperating source under the direction and control of law enforcement. Furthermore, the veracity of CS-4's account was corroborated through records and investigative actions taken by law enforcement. On or about November 2018, CS-4 voluntarily disclosed that an associate in Mexico provided the telephone contact information for a Los Angeles based narcotics broker (an individual who engages in the facilitation of a narcotics transaction). Under the direction of law enforcement, CS-4 posed as an SOS for cocaine and the broker, later identified as CW-4, agreed to purchase 20 kilograms of cocaine valued at approximately $23,000 each, with an arrangement to give 10 kilograms of cocaine prior to payment. CS-4 met with the broker to discuss the narcotics transaction. Law enforcement then followed the broker to a meeting with E. MEDINA, who they identified as the buyer for whom the broker was coordinating the deal. In or about November 2018, prior to the completion of the narcotics deal, law enforcement took positive enforcement action against E. MEDINA. Pursuant to a search warrant, law enforcement seized a money counter, currency, two cellphones, and an AR -15 rifle from the HARVARD ADDRESS. E. MEDINA disclosed to law enforcement that he lived at the HARVARD ADDRESS and that everything inside the apartment, including the rifle, belonged to him and no one else. Law enforcement documented that MONTOYA was also

23

detained at the location. This case remains in a pending status, and E. MEDINA is not currently detained pursuant to this case. Based on training and experience, the receipt of the broker's contact information in Mexico coupled with the identity of the purchaser (E. MEDINA), suggested that E. MEDINA's criminal enterprise is allied with a Mexican transnational criminal organization that is the international SOS for the domestic distribution of cocaine in the United States. CW-4, the broker, spoke with law enforcement and verified that during November 2018 he was acting as a broker on behalf of both E. MEDINA and MONTOYA in order to secure multiple kilograms of cocaine.

## APPLE ICLOUD SEARCH WARRANT

50.     An Apple iCloud search warrant was executed upon the MEDINA TELEPHONE NUMBER. Of notable interest, the results reflected that the MEDINA TELEPHONE NUMBER was associated with an email address of medinalalo@yahoo.com and contained several photographic images of E. MEDINA. Moreover, there were several contact names and/or numbers which were associated with ASCENCIO, MONTOYA, "Murda" (also known as WILLIAMS), and CW-1, once again affirming the relationship between E. MEDINA and known conspirators. Furthermore, there was a photographic image of a business card bearing the name of "Carlos Ascencio," and an address of "106 ½ Judge John Aiso St. #413, Los Angeles, CA 90012." This address returns to an Ace One Stop Mail Plus facility. Notably, there were two USPS tracking numbers found during the search of the WILLIAMS telephone destined for 106 ½ Judge John Aiso St., Los Angeles, CA from New York. Based on my training and experience, it is likely that these shipments contained narcotics proceeds.

51.     Additionally, undated searched items reflected miscellaneous queries to include "cyrus williams queens new york" and "alexandria federal detention center." Moreover, there

was also an undated search for "505 vermont." The embedded URL returned to a google map address of 505 S. Vermont Ave., Los Angeles, CA. Notably, 505 S. Vermont Ave., Los Angeles CA was the recipient address of at least seven known USPS tracked packages found in the search of the cellular telephone associated with the WILLIAMS TELEPHONE NUMBER.

52.     The only recovered iCloud information was for the time period between June 8, 2018 and November 26, 2018. This timeframe begins after the WILLIAMS arrest date and ceases on or about the E. MEDINA arrest date in November of 2018. This, in my training and experience, is consistent with the deletion of any and all inculpatory evidence of narcotics trafficking.

## DRUG TRAFFICKING PROCEEDS

53.     Law enforcement estimates that between December 2015 and April 2018, at least $900,000 in U.S.C. was deposited mainly by the New York DTO into identified California DTO funnel accounts. This amount, when divided by the average price of a kilogram quantity of cocaine in Los Angeles ($24,500.00) would suggest that at least 36 kilograms of cocaine were sold to the New York DTO. As described above, once the U.S.C. was deposited, it was withdrawn in California as cash. Moreover, based on financial records and communications between E. MEDINA, WILLIAMS, and RODRIGUEZ, it appears that the average price of a kilogram quantity of cocaine sold to the New York DTO was approximately $27,000 – resulting in a $2,500.00 profit per kilogram or at least a $90,000 profit for the California DTO and E. MEDINA.

## CONCLUSION

28.     Based on the forgoing facts, there is probable cause to believe that between November 2016 and November 2018, the defendant, EBERARDO MEDINA did knowingly,

unlawfully, and intentionally combined, conspired, confederated, and agreed with others, both known and unknown, to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and to commit money launder in violation of Title 18, United States Code, Sections 1956(a) and (h).

Youssef Ouzidane
Task Force Officer
Drug Enforcement Administration

Sworn and subscribed to before me the 15 day of November 2019.

_____/s/_____
John F. Anderson
United States Magistrate Judge

The Honorable John F. Anderson
United States Magistrate Judge

**EXHIBIT A**

### JESUS MEDINA'S ACCOUNTS REFLECTED MONEY LAUNDERING

Your affiant obtained and reviewed records maintained by Bank of America regarding account #XXXXXXXX1415, for the period February 1, 2017 through February 2, 2018. Those records reflect that the account was opened on February 1, 2017, as a Core Checking Account in the name of JESUS MEDINA with him as the sole signatory on the account. Your affiant also obtained and reviewed records maintained by Wells Fargo regarding account #XXXXXX2199 from February 14, 2017 to June 9, 2017.  Those records reflect that the account was opened on February 14, 2017, as a Checking Account in the name of JESUS MEDINA with him being the sole signatory on the account. Records reflect the following notable forty (40) cash transactions posted to the accounts between February 1, 2017 and February 2, 2018 (*reflected times are that of the time zone for the denoted state)*:

| NAME | BANK | ACCOUNT # | DATE | TIME | CASH DEPOSIT | CASH WITHDRAWAL | LOCATION |
|---|---|---|---|---|---|---|---|
| JESUS MEDINA | BOA | 325087911415 | 2/13/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 2/14/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 3/13/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 3/14/2017 | | | $8,850.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 4/10/2017 | | | $8,970.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 4/10/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 4/28/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 5/1/2017 | | | $8,750.00 | |
| JESUS MEDINA | BOA | 325087911415 | 5/4/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 5/5/2017 | | | $8,750.00 | |
| JESUS MEDINA | BOA | 325087911415 | 6/7/2017 | | $9,000.00 | | NY |

| JESUS MEDINA | BOA | 325087911415 | 6/8/2017 | | | $8,750.00 | CA |
|---|---|---|---|---|---|---|---|
| JESUS MEDINA | BOA | 325087911415 | 6/22/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 6/23/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 7/10/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 7/11/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 8/11/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 8/14/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 9/13/2017 | | $8,900.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 9/14/2017 | | | $8,650.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 9/20/2017 | | | $500.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 9/20/2017 | | $1,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 9/21/2017 | | | $400.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 10/24/2017 | | $9,000.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 10/25/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 11/13/2017 | | $3,800.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 11/14/2017 | | | $3,640.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 11/21/2017 | | $7,500.00 | | NY |
| JESUS MEDINA | BOA | 325087911415 | 11/22/2017 | | | $7,300.00 | CA |
| JESUS MEDINA | BOA | 325087911415 | 11/28/2017 | | $6,000.00 | | UNK |
| JESUS MEDINA | BOA | 325087911415 | 11/29/2017 | | | $5,800.00 | CA |
| JESUS MEDINA | WF | 8714072199 | 2/16/2017 | 16:02:03 | $4,500.00 | | VA |
| JESUS MEDINA | WF | 8714072199 | 2/16/2017 | 16:16:14 | $4,500.00 | | VA |
| JESUS MEDINA | WF | 8714072199 | 2/17/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | WF | 8714072199 | 3/20/2017 | 13:44:23 | $9,000.00 | | NY |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| JESUS MEDINA | WF | 8714072199 | 3/21/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | WF | 8714072199 | 4/13/2017 | 13:28:43 | $9,000.00 | | NY |
| JESUS MEDINA | WF | 8714072199 | 4/14/2017 | | | $8,750.00 | CA |
| JESUS MEDINA | WF | 8714072199 | 5/22/2017 | 17:55:47 | $9,000.00 | | NY |
| JESUS MEDINA | WF | 8714072199 | 5/23/2017 | | | $8,750.00 | CA |
| | | | | | | | |
| | | | TOTAL | | $153,200.00 | $149,110.00 | |

## ASCENCIO'S ACCOUNTS REFLECTED MONEY LAUNDERING

Your affiant obtained and reviewed records maintained by Wells Fargo regarding account #XXXXXX6651, for the period December 7, 2016, through July 6, 2018. Those records reflect that the account was opened on August 1, 2016, as a Simple Business Checking Account in the name of Carlos A. Ascencio DBA Carlos A. Ascencio. CARLOS ASCENCIO was the sole signatory on the account.

Your affiant also obtained and reviewed records maintained by Wells Fargo regarding account #XXXXXX7028 for the period December 7, 2016, through July 6, 2018. Those records reflect that the account was opened on August 1, 2016, as a Business Market Rate Savings Account in the name of Carlos A. Ascencio DBA Carlos A. Ascencio. CARLOS ASCENCIO was the sole signatory on the account.

Your affiant also obtained and reviewed records maintained by Bank of America regarding account #XXXXXXXX1043 for the period December 29, 2016, through March 20, 2017. Those records reflect the account was opened on December 29, 2016, as a Checking Account. CARLOS A. ASCENCIO was the sole signatory on the account.

Records reflect the following notable seventy-one (71) cash transactions (or notable transfers) posted to the three aforementioned accounts between December 29, 2016, and July 6, 2018 (*reflected times are that of the time zone for the denoted state*):

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ASCENCIO | WF | 9771806651 | 12/29/2016 | 15:51:53 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 12/30/2016 | 10:45:26 | | $9,000.00 | CA | |
| ASCENCIO | BOA | 325086371043 | 1/5/2017 | 12:48 | $9,000.00 | | NY | |
| ASCENCIO | BOA | 325086371043 | 1/6/2017 | 10:49 | | $9,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/7/2017 | 13:04 | | $765.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/7/2017 | 13:27:04 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 1/9/2017 | 13:20:17 | | $8,800.00 | CA | |
| ASCENCIO | BOA | 325086371043 | 1/17/2017 | 14:07 | $9,000.00 | | NY | |
| ASCENCIO | BOA | 325086371043 | 1/18/2017 | 12:42 | | $9,000.00 | CA | |
| ASCENCIO | BOA | 325086371043 | 1/26/2017 | 13:02 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 1/26/2017 | 16:57:26 | $9,000.00 | | NY | |
| ASCENCIO | BOA | 325086371043 | 1/27/2017 | 10:52 | | $9,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/27/2017 | 10:13:45 | | $5,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/27/2017 | 10:25 | | $4,000.00 | CA | |
| ASCENCIO | BOA | 325086371043 | 1/31/2017 | 14:16 | $9,000.00 | | NY | |
| ASCENCIO | BOA | 325086371043 | 2/1/2017 | 11:18 | | $9,000.00 | CA | |
| ASCENCIO | BOA | 325086371043 | 2/14/2017 | 16:54 | $8,968.00 | | NY | |
| ASCENCIO | BOA | 325086371043 | 2/15/2017 | 13:54 | | $8,968.00 | CA | |
| ASCENCIO | WF | 9771806651 | 2/15/2017 | 12:51:56 | $3,500.00 | | VA | |
| ASCENCIO | WF | 9771806651 | 2/15/2017 | 15:41:54 | $5,500.00 | | VA | |
| ASCENCIO | WF | 9771806651 | 2/16/2017 | 13:49:50 | | $9,000.00 | CA | |
| ASCENCIO | BOA | 325086371043 | 2/23/2017 | 13:30 | $9,000.00 | | NY | |
| ASCENCIO | BOA | 325086371043 | 2/24/2017 | 9:57 | | $9,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 4/18/2017 | 15:45:59 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 4/21/2017 | 13:48:36 | | $5,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 4/21/2017 | 14:07:00 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/3/2017 | 13:42:59 | | $6,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/3/2017 | 14:11:12 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 5/9/2017 | 13:18 | | $2,100.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/9/2017 | 17:50:15 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 5/10/2017 | 11:05 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/10/2017 | 11:07 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/11/2017 | 13:54 | | $2,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/30/2017 | 14:44:24 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 5/31/2017 | 9:46:58 | | $5,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 5/31/2017 | 9:52 | | $4,000.00 | CA | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ASCENCIO | WF | 9771806651 | 6/23/2017 | 13:13:10 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 6/26/2017 | 11:13 | | $1,565.00 | CA | |
| ASCENCIO | WF | 9771806651 | 6/26/2017 | 12:26:04 | | $8,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 8/1/2017 | | | $60.00 | | 60 TRANSFER TO FEMALE 1 FROM LALO |
| ASCENCIO | WF | 9771806651 | 8/2/2017 | | | $500.00 | | 500 TRANSFER TO FEMALE 2 FROM LALOW |
| ASCENCIO | WF | 9771806651 | 8/8/2017 | 15:09:18 | $9,000.00 | | NY | |
| ASCENCIO | WF | 7565137028 | 8/8/2017 | | | $300.00 | | 300 TRANSFER TO FEMALE 1 FROM LALO |
| ASCENCIO | WF | 9771806651 | 8/9/2017 | 10:37 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 8/9/2017 | 11:01:05 | | $4,750.00 | CA | |
| ASCENCIO | WF | 9771806651 | 8/12/2017 | | | $300.00 | | 300 TRANSFER TO FEMALE 1 FROM LALOW |
| ASCENCIO | WF | 9771806651 | 8/13/2017 | | | $300.00 | | 300 TRANSFER TO FEMALE 1 FROM LALOW |
| ASCENCIO | WF | 7565137028 | 8/19/2017 | | | $300.00 | | 300 TRANSFER TO FEMALE 1 FROM L |
| ASCENCIO | WF | 9771806651 | 9/21/2017 | | | $500.00 | | 500 TRANSFER TO FEMALE 2 FROM LALOW |
| ASCENCIO | WF | 9771806651 | 11/28/2017 | 12:59:54 | | $5,702.00 | CA | |
| ASCENCIO | WF | 9771806651 | 11/28/2017 | 15:18:24 | $6,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 1/12/2018 | 12:29 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/12/2018 | 12:48:25 | | $5,040.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/12/2018 | 15:02:26 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 1/16/2018 | 15:41 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 1/16/2018 | 15:49:11 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 1/16/2018 | 16:08:40 | | $5,000.00 | CA | |
| ASCENCIO | WF | 7565137028 | 1/17/2018 | 15:30 | | $8,750.00 | CA | |
| ASCENCIO | WF | 7565137028 | 1/17/2018 | 16:35:00 | $8,750.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 1/31/2018 | 15:41:26 | $500.00 | | NY | |
| ASCENCIO | WF | 7565137028 | 3/5/2018 | 14:40:28 | $9,000.00 | | NY | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ASCENCIO | WF | 7565137028 | 3/5/2018 | 16:15:55 | | $9,000.00 | CA | |
| ASCENCIO | WF | 7565137028 | 3/8/2018 | 12:16:18 | $6,830.00 | | NY | KNOWN AMOUNT BY CYRUS FROM TEXTS |
| ASCENCIO | WF | 9771806651 | 3/8/2018 | | | $2,830.00 | CA | |
| ASCENCIO | WF | 9771806651 | 3/8/2018 | | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 3/10/2018 | 13:41:00 | $9,000.00 | | NY | |
| ASCENCIO | WF | 9771806651 | 3/10/2018 | 15:00 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 3/10/2018 | 15:00 | | $4,000.00 | CA | |
| ASCENCIO | WF | 9771806651 | 3/10/2018 | 1500 | | $1,000.00 | CA | |
| ASCENCIO | WF | 7565137028 | 3/14/2018 | 13:22:01 | $1,100.00 | | NY | |
| ASCENCIO | WF | 7565137028 | 3/14/2018 | | | $1,100.00 | | 1100 TRANSFER TO 6651 |
| | | | | | | | | |
| | | | | | $203,148.00 | $205,630.00 | | |

## MONTOYA'S ACCOUNTS REFLECTED MONEY LAUNDERING

Your affiant obtained and reviewed records maintained by Wells Fargo regarding account #XXXXXX9829, for the period January 1, 2017, through November 20, 2017. Those records reflect that the account was opened on August 14, 2015, as Way2Save Savings Account in the name of Juan J. Montoya with JUAN MONTOYA as the sole signatory on the account.

Your affiant also obtained and reviewed records maintained by Wells Fargo regarding account #XXXXXXX2680 from November 15, 2017, to August 14, 2018. Those records reflect that the account was opened on November 15, 2017, as an Everyday Checking Account in the name of Juan J. Montoya with JUAN MONTOYA as the sole signatory on the account.

Your affiant also obtained and reviewed records maintained by Bank of America regarding account #XXXXXXXXX6993 from April 17, 2017, to December 15, 2017. Those records reflect the account was opened on April 17, 2017, as a Checking Account in the name of Juan Montoya. JUAN MONTOYA was the sole signatory on the account.

Records reflect the following notable forty-eight (48) cash transactions posted to the accounts between February 2, 2017, and March 12, 2018 (*reflected times are that of the time zone for the denoted state)*:

| BANK | ACCOUNT # | DATE | TIME | CASH DEPOSIT | CASH WITHDRAWAL | LOCATION |
|------|-----------|------|------|--------------|-----------------|----------|
| WF | XXXXXX9829 | 02/02/17 | 16:06:04 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 02/02/17 | 16:06:04 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 02/13/17 | 14:26:53 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 02/13/17 | 17:08:08 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 03/01/17 | 14:41:56 | $4,500.00 | | VIRGINIA BEACH VA |
| WF | XXXXXX9829 | 03/01/17 | 15:29:14 | $4,500.00 | | CHESAPEAKE VA |
| WF | XXXXXX9829 | 03/01/17 | 17:05:14 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 03/21/17 | 13:36:24 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 03/21/17 | 16:43:53 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 03/30/17 | 15:55:44 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 03/30/17 | 17:03:14 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 04/25/17 | 14:21:36 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 04/25/17 | 16:59:37 | | $9,000.00 | BEVERLY HILLS |
| BOA | XXXXXXXX6993 | 05/09/17 | 16:43:00 | $9,000.00 | | 3912 MAIN STREET, FLUSHING NY |
| BOA | XXXXXXXX6993 | 05/10/17 | 11:00:00 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 05/22/17 | 18:38:56 | $8,900.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 05/22/17 | 17:10:12 | | $8,900.00 | BEVERLY HILLS |
| BOA | XXXXXXXX6993 | 05/23/17 | 13:49:00 | $9,000.00 | | 1415 COLLEGE POINT BLVD, COLLEGE POINT, NY |
| BOA | XXXXXXXX6993 | 05/24/17 | 0:49:00 | | $9,000.00 | LOS ANGELES |
| BOA | XXXXXXXX6993 | 06/07/17 | 12:30:00 | $9,000.00 | | 10 MIDDLE NECK RD, GREAT NECK, NY |
| BOA | XXXXXXXX6993 | 06/08/17 | 9:18:00 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 06/13/17 | 16:30:07 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 06/13/17 | 17:05:27 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 07/01/17 | 13:51:59 | $9,000.00 | | 20 GREAT NECK RD., GREAT NECK NY |
| WF | XXXXXX9829 | 07/01/17 | 12:30:40 | | $9,000.00 | LOS ANGELES |
| BOA | XXXXXXXX6993 | 07/10/17 | 15:20:00 | $9,000.00 | | 10 MIDDLE NECK RD, GREAT NECK, NY |

| | | | | | | |
|---|---|---|---|---|---|---|
| BOA | XXXXXXXX6993 | 07/11/17 | 17:25:00 | | $9,000.00 | BEVERLY HILLS |
| BOA | XXXXXXXX6993 | 08/08/17 | 15:04:00 | $9,000.00 | | 10 MIDDLE NECK RD, GREAT NECK, NY |
| WF | XXXXXX9829 | 08/09/17 | 14:13:51 | $8,000.00 | | 20 GREAT NECK RD., GREAT NECK NY |
| BOA | XXXXXXXX6993 | 08/09/17 | 17:07:00 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 08/09/17 | 17:26:28 | | $8,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 08/14/17 | 13:35:21 | $8,000.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 08/14/17 | 16:01:00 | | $8,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 10/24/17 | 14:41:50 | $9,000.00 | | 20 GREAT NECK RD., GREAT NECK NY |
| WF | XXXXXX9829 | 10/24/17 | 17:06:48 | | $9,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 11/21/17 | 16:07:47 | $7,500.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 11/21/17 | 17:23:50 | | $7,500.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 01/11/18 | 14:31:34 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK, NY |
| WF | XXXXXX9829 | 01/11/18 | 17:16:56 | | $9,000.00 | DOWNEY |
| WF | XXXXXX9829 | 01/16/18 | 16:52:15 | $7,000.00 | | 2499 JERICHO TPKE GARDEN CITY, NY |
| WF | XXXXXX9829 | 01/16/18 | 16:39:23 | | $7,000.00 | BEVERLY HILLS |
| WF | XXXXXX9829 | 03/06/18 | 9:58:42 | $50.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 03/06/18 | 9:52:44 | $8,950.00 | | 20 GREAT NECK RD, GREAT NECK NY |
| WF | XXXXXX9829 | 03/06/18 | 11:01:38 | | $9,000.00 | DOWNEY |
| WF | 8359602680 | 03/10/18 | 13:05:54 | $9,000.00 | | 20 GREAT NECK RD, GREAT NECK, NY |
| WF | 8359602680 | 03/10/18 | 13:57:04 | | $9,000.00 | LOS ANGELES |
| WF | 8359602680 | 03/12/18 | 14:10:03 | $7,000.00 | | 137 JACKSON AVE, SYOSSET NY |
| WF | 8359602680 | 03/12/18 | 17:17:30 | | $7,000.00 | BEVERLY HILLS |
| | | | | | | |
| | | | Total | $199,400.00 | $199,400.00 | |